ALEXANDRA ARNERI (CA SNB 265156)
Cittone & Chinta LLP
Embarcadero 2
8th Floor
San Francisco, CA 94111
Tel. 415.662.8270
Fax 413.778.2313
aarneri@cittonechinta.com

Attorneys for Defendant
PENGUIN TRADING, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ANTHONY BUSO, on behalf of himself and all others similarly situated, | Case No.: 2:17-cv-07025-DMG-KS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS OR IN THE ALTERNAIVE TO TRANSFER OR STAY PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| vs. | |
| PENGUIN TRADING, INC., | Action filed: September 22, 2017 |
| | Amended Complaint filed: October 1, 2017 |
| Defendant. | |
| | Hearing Date: December 8, 2017 |
| | Time:            9:30 am |
| | Judge:       Honorable Dolly M. Gee |
| | Courtroom:       8C |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………..iv

NOTICE OF MOTION AND MOTION…………………………………………….xiii

MEMORANDUM OF POINTS AND AUTHORITIES……………………………1

I.    INTRODUCTION .......................................................................................... 1

II.   BACKGROUND ............................................................................................ 2

A.  Defendant's Standard and Mini Packaging........................................... 2

B.  The Slack-Fill Letter Mill and the New York Action ......................... 3

III.  ARGUMENT ................................................................................................. 4

A.  Plaintiff's Complaint Should Be Dismissed for Failing to State a Claim................ 4

i.    Legal Standard ........................................................................... 4

ii.   Plaintiff Lacks Standing for All of Defendant's Products................... 5

iii.  Plaintiff Fails to Make a Plausible Claim .............................. 7

iv.   Plaintiff Fails to Satisfy the Reasonable Consumer Standard........................ 10

v.    Plaintiff Fails to Satisfy the Heightened Pleading Requirements of Rule 9 (b) .. 13

vi.   Plaintiff's Claims Are Preempted .......................................... 14

B.  Plaintiff's Claims Should Be Dismissed for Improper Venue ............................... 16

i.    Legal Standard ......................................................................... 16

ii.   Plaintiff Cannot Satisfy Venue Requirements ...................... 16

C.  In the Alternative, Plaintiff's Claims Should Be Transferred to the Eastern District of New York .............................................................. 16

i.    Legal Standard ......................................................................... 16

ii.   The Parties Are Already in Litigation in the Eastern District of New York on Substantially the Same Issues ............................................. 18

iii.  The New York Action is an Appropriate, First Filed Action ........................... 19

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

iv.     The Eastern District of New York is the More Convenient Venue ................20

D.  In the Second Alternative, the Court Should Stay this Proceeding ......................22

IV.   conclusion ..........................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                          **Page(s)**

*Allen v. Similasan Corp.*
Civ. No. 12-376 BTM WMC, 2013 WL 2120825 (S.D. Cal. May 14, 2013)……………………………………………………...............16

*Alltrade, Inc. v. Uniweld Prods., Inc.*
946 F.2d 622 (9th Cir. 1991)………………………………………….17, 18

*Anderson v. Jamba Juice Co.*
888 F. Supp. 2d 1000 (N.D. Cal 2012)…………………………………….6

*Ang v. Bimbo Bakeries USA, Inc.*
No 13-cv-1196 (N.D. Cal. March 14, 2014)…………………...............6

*Ashcroft v. Iqbal*
129 S. Ct. 662 (2009)…………………………………………….....4,5

*Astiana v. Hain Celestial Grp., Inc.*
 783 F.3d 753 (9th Cir. 2015)…………………………………...............15

*Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*
283 F.2d 551 (9th Cir. 1960) …………………………………………….10

*Bautista v. Cytosport, Inc.*
7:15-cv-09081-CS (December 12, 2015)……………………………………..9

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)……………………………………………………… 4, 5

*Bimont v. Unilever U.S., Inc.*
 2015 U.S. Dist. LEXIS 119908 (S.D.N.Y.)…………………………………15

*Bush v. Mondelez International*, *Inc. et. al.*
Case No. 3:16-cv-02460-RS (N.D. Cal. Oct. 7, 2016)…………………………11

*Cadle Co. v. Whataburger of Alice*
174 F.3d 599, 603 (5th Cir. 1999)………………………………………17, 22

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*
 637 F.3d 1047, 1055 (9th Cir. 2011)……………………………………5, 13

*Carrera v. Dreyer's Grand Ice Cream, Inc.*
No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011)……………………………………………………………………..6

*Church of Scientology v. U.S. Dep't the Army*
611 F.2d 738, 750 (9th Cir. 1979)………………………………………17

*Cook v. Fox*
537 F.2d 370, 371 (9th Cir.1976)………………………………………16

*Columbia Pictures Industries, Inc. v. Schneider*
435 F. Supp. 742 (S.D.N.Y. 1977)………………………………………20, 22

1

*Del Real LLC v. Kamala D. Harris*

966 F. Supp. 2d 1047 (E.D. Cal. 2013), aff'd --- F. App'x. ----, 2016 WL 611630  (9th

Cir. Feb. 12, 2016)………………………………………………………………..15


*D.H. Blair & Co. v. Gottdiener*

462 F.3d 95, 106 (2d Cir. 2006)……………………………………………………19, 20


*Ebner v. Fresh, Inc.*

 No. 13-56644, 2016 WL 5389307 (9th Cir. Sept. 27, 2016)…………………………..11


*Epstein v. Washington Energy Co.*

83 F. 3d at 1140 (9th Cir. 1996)……………………………………………………….5


*Fermin v. Pfizer*

No. 15-2133, 2016 WL 620891 (E.D.N.Y. Oct. 18, 2016)…………………………….11


*Freeman v. Time, Inc.*

68 F.3d 285, 289 (9th Cir.1995)……………………………………………….....10


*F.T.C. v. Wat on Pharm., Inc.*

611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009)………………………………………….17


*Gade v. National Solid Wastes Mgmt. Ass'n*

505 U.S. 88 (1992)…………………………………………………………………..15


*Hairston v. S. Beach Beverage Co.*

No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012)…………………………..10

*Hawkins v. UGI Corp.*
No. 14- 08461, 2016 WL2595990 (C.D. Cal. May 4, 2016)………………10, 16, 17, 21

*Hinojos v. Kohl's Corp.*
No. 11-55793 2013 U.S. App. LEXIS 10185 (9th Cir. May 21, 2013)…………………..6

*In re Gilead Scis. Sec. Litig.*
536 F.3d 1049, 1056-57 (9th Cir. 2008)……………………………………………5

*In re VeriFone Sec. Litig.*
 11 F.3d 865, 868 (9th Cir.1993)……………………………………………………5

*Johns v. Bayer Corp.*
No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010)………………………………………………………………………………..6

*Jones v. GNC Franchising, Inc.*
2 Co.11 F.3d. 495 (9th Cir. 2000)………………………………………..17, 18, 20

*Jones v. Rath Packing Co.*, 430 U.S. (1977)…………………………………………14

*Joseph Bancroft & Sons Co. v. Spunize Co. of America*
 268 F.2d 522 (2d. Cir. 1959)…………………………………………………..18

*Kearns v. Ford Motor Co.*
567 F. 3d 1120, 1124-27 (9th Cir. 2009)……………………………………5, 13, 14

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

*Kline v. Burke Construction Co.*
 294 U.S. 189 (1922)....................................................................................17

*Kerotest Manufacturing Company v. C-O-Two Fire Equipment Company*
342 U.S. 180 (1952)……………………………………………………17, 18

*Kohn Law Group v. Auto Parts MGF. Mississippi*
787 F.3d 1237 (2015)……………………………………………………18, 22

*Kwikset Corp v. Superior Court*
 246 P.3d at 855 (Cal 2011)……………………………………………………..6

*Landis v North American Co.*
299 U.S. 248 (1936)……………………………………………………………22

*Lavie v. Procter & Gamble Co.*
105 Cal. App. 4th 496 (2003)……………………………………………………..10

*Leyva v. Certified Grocers of California, Ltd.*
593 F.2d 857, 863 (9th Cir. 1979)……………………………………………22

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)……………………………………………………………..5

*Lunada Biomedical v. Nunez*
230 Cal. App. 4th 459 (2014)……………………………………………………20

*Mattel, Inc. v. Louis Marx & Co.*

 353 F.2d (2ⁿᵈ Cir. 1965)………………………………………………………20

*McKinnis v. Kellogg USA*

 No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal Sept. 19, 2007)

……………………………………………………………………………………10

*Monsanto Co. v. Geertson Seed Farms*

561 U.S. 139 (2010)……………………………………………………………..5

*Munns v. Clinton*

822 F. Supp. 2d 1048 (E.D. Cal 2011)…………………………………………16

*O'Connor v. Henkel Corp.*

No. 14-CV-5547, 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015)………………9

*Oleg Cassini, Inc. v. Serta*

2012 LEXIS 33875 (S.D.N.Y. 2012)…………………………………………..19

*Oklevueha Natice Am. Church of Haw., Inc. v Holder*

676 F.3d 829, 834 (9th Cir. 2012)………………………………………………5

*Pacesetter Sys., Inc. v. Medtronic*

678 F.2d 93, 95 (9th Cir. 1982)………………………………………………22

*Park v. Welch Foods, Inc.*

No. 12-06449, 2013 WL 5405318 (N.D. Cal. Sept. 26, 2013)…………………..9

*Penn General Cas. Co. v. Commonwealth of Pennsylvania*
294 U.S. 189 (1935)……………………………………………………………17

*Piedmont Label v. Sun Garden Packaging*
598 F.2d 491, 496 (9th Cir. 1979)…………………………………………………16

*Piper Aircraft v. Reyno*
454 U.S. 235 (1981)……………………………………………………………17

*Safarian v. Maserati N. Am., Inc.*
559 F. Supp. 2d 1068, 1071 (C.D. Cal 2008)………………………………………..17

*Samet v. Procter & Gamble Co.*
No. 12-CV-1891, 2013 WL 3124647 (N.D. Cal. June 18, 2013)………………………9

*Stewart Organization, Inc. v. Ricoh Corp.*
487 U.S. 22, 29 (1988)…………………………………………………………17,18

*Turek v. Gen. Mills, Inc.*
662 F.3d at 426 (7th Cir. 2011)…………………………………………………..15

*Van Dusen v. Barrack*
376 U.S. 612, 616 (1964)………………………………………………………17

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097, 1103, 1106 (9th Cir. 2003)…………………………………..5, 13, 14

*Victor v. R.C. Bigelow, Inc.*
No. 13-02976 2014 WL 102881 (N.D. Cal March 14, 2014)…………………………6, 9

*Werbel v. Pepsico, Inc.*
No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010)…………………10

*Westinghouse Elec. Corp. v. Weigel*
426 F.2d 1356, 1358 (9th Cir.1970)……………………………………………………...17, 18

*Williams v. Gerber Prods. Co.*
552 F.3d 934, 938 (9th Cir. 2008)………………………………………………………10

**STATUTUES**

21 C.F.R. §100.100 (a) (59 F. R. 537, Jan 5 1994)……………2, 3, 4, 7, 8, 9, 15, 18, 21

21 U.S.C §343 (d) ………………………………………………………………7

21 U.S.C. § 343-1……………………………………………………………15

28 U.S.C. §1332 (d)……………………………………………… ……20

28 U.S.C. § 1391(b)………………………………………….. ……….16

28 U.S.C. §1404(a)………………………………………………xiii, 16

28 U.S.C. §1406(a)……………………………………………… 16

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

California Civil Code §§ 1750 *et. seq*..……………………………………………7

California Civil Code §1170 ……………………………………………………….7

Californian Business & Professions Code § 12606.2………………………………...7, 15

New York General Business Law §349…………………………………………18

New York Civil Practice Law §302……………………………………………….20

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 12 ………………………………xiii, 1, 4, 5, 10, 16

Federal Rule of Civil Procedure Rule 9………………………………………xiii, 1, 5

**PLEASE TAKE NOTICE THAT** on December 8, 2017 at 9.30 am, or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Western Division, located at the United States Courthouse, 350 West 1st Street, Los Angeles, CA. 90012, Courtroom 8C, 8th Floor before the Honorable Justice Dolly M. Gee, Defendant Penguin Trading, Inc. d/b/a Fruit Bliss ("Defendant") will, and hereby does move, to dismiss the First Amended Complaint ("FAC") of Plaintiff Anthony Buso ("Plaintiff") pursuant to (i) Federal Rule of Civil Procedure 12(b)(6) on the ground that the FAC fails to state a claim upon which relief can be granted, (iii) Fed. R. Civ. P. 9(b) for failure to plead claims grounded in fraud with sufficient particularity and (iii) Federal Rule of Civil Procedure 12(b)(3) for improper venue. In addition, and in the alternative, pursuant to 28 U.S.C. §1404(a) for (i) transfer and consolidation to the pending litigation between Plaintiff and Defendant on substantially the same issues before the Eastern District of New York or in the second alternative (ii) a stay of proceedings until a decision over continuance is made in the Parties' action before the Eastern District of New York.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 4, 2017 during which the Parties were unable to achieve a settlement.


This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and its attached Exhibits, the Declaration in support of the Request for Judicial Notice and on such other written and oral argument as may be presented to the Court.


Dated: October 25, 2017          By:          CITTONE & CHINTA LLP

                                              /s/Alexandra Arneri
                                              Alexandra Arneri

                                              Attorneys for Defendant

---

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Plaintiff's FAC is a husk compromised of naked assertions and conclusory allegations that fails to state a plausible claim on its face as required under Federal Rule of Civil Procedure Rule ("Fed. R. of Civ. Pro.") 12(b)(6). Plaintiff fails to allege sufficient facts that he has standing, fails to satisfy the reasonable consumer standard necessary for actions under the Consumer Legal Remedies Act ("CLRA") and his claim is preempted to the extent that it aims to impute a quantitative restriction to permissible slack-fill. Plaintiff's mere regurgitation of the elements of an action and his request that the court find a presumption of reliance without him having to plead it fails to meet the requisite pleading standards of Fed. R. of Civ. Pro. Rule 9 (b) applicable to CLRA actions that require that Plaintiff plead reliance with particularity. Lastly, Plaintiff's claim should be dismissed under Fed. R. of Civ. Pro. Rule 12(b)(3) for improper venue as the Defendant does not reside in this judicial district and no element of the cause of action occurred within this district.

In the alternative, this action should be transferred to the Eastern District of New York ("EDNY") for consolidation, where it should properly have been filed as a counter-claim in a pending suit on substantially the same causes of action between the parties. The EDNY is the more appropriate forum for the Parties to litigate as the majority of witnesses, including third party witnesses and evidence is located within the district. Additionally, the interests of comity provide a strong presumption in favor of first-filed actions. In the second alternative, this action should be stayed until the EDNY, as the first filed court, has had a chance to adjudicate the appropriateness of its venue and jurisdiction, in the interests of comity, sound public policy against duplication of suits and saving both parties' expense.

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

## II.   **BACKGROUND**

### A.     **Defendant's Standard and Mini Packaging**

Defendant is a producer of organic dried fruit which it packages in two different types of plastic packaging. The Defendant's standard product is packaged in a re-sealable self-standing pouch or "stand-up packaging" ("SUP") as it's known in the trade. Defendant's mini pouch is a "pillow bag". Both are common packaging used for a variety of goods sold in supermarkets, from dried fruit, such as Defendant's products, to nuts and in the case of the larger SUPs, coffee beans, granola and spices. It is also common for dried fruit packaging to not use transparent film to protect the fruit from the deleterious effects of photodegradation.

Defendant's SUP is small. It is a mere 6 inches wide and 7 inches in length and its plastic film is an almost gossamer thickness at 4 mils in width. It is flat except for the portion which contains fruit and the empty space is readily visible as is evidenced from photos in Exhibit A[1] and Plaintiff's own photographs in his FAC. The net weight is clearly discernable. In addition, any visual ambiguity is settled as soon as a person picks up the packaging, for the SUPs are flat where there is no product, not puffy, and the dried fruit has a distinct tactile difference to the empty plastic.

The mechanics of the re-sealable stand up pouch necessitate legal functional slack-fill. The gusseted pouch is first filled with dried fruit then lifted up by robotic arms at its sides for attaching the re-sealable, ziplock top. In order to ensure consumer product quality, the fruit must of necessity not reach the area of the packet grabbed by the robotic arms for ziplock attachment or the arms would invariably smash and contaminate the fruit. The pouch must of necessity be large enough to accommodate federal nutritional requirements in a legible manner to potential consumers. Machine-fill and labelling requirements are expressly permissible slack-fill under 21 C.F.R. §100.100 (a) (59 F. R.

---

[1] Exhibits A, B and C as referenced throughout this Motion to Dismiss, Transfer or Stay are attached to the concurrently filed Request for Judicial Notice in support of this Motion.

537, Jan 5 1994). Additionally, the dried fruit settles at the bottom from shipping and handling which is another express functional and permissible reason for slack-fill under 21 CFR §100.100 (a), *ibid*. The re-sealable stand-up pouch naturally expands when it is opened, to allow removal of the fruit.  Thus, after purchase, when the fruit amount has already been felt and net ounces read by the consumer off the packaging, upon opening of the ziplock, the pouch expands to allow extraction of the fruit, which may result in further settling. Hence Plaintiff's pictures and reliance on the opened packaging in his FAC is misleading.

While Plaintiff's FAC only refers to Defendant's SUP, he nevertheless applies his claim to all of Defendant's products, which include Defendant's "mini" packaging. Defendant's mini product is, unsurprisingly, much smaller and holds only 1.76 oz of product. It is 3.75 inches wide, 4.75 inches in length and its plastic film is a mere 2.75 mils thick. It does not stand up like the SUP and is filled by a different machine, a vertical form, fill and seal machine. Its form, as well as its appearance as can clearly be seen from Exhibit A, is very different to the SUP.

**B.    The Slack-Fill Letter Mill and the New York Action**

A cascade of class actions has deluged the courts in recent years, wasting their resources.  Courts have recently applied stricter standards at the pleading stage and dismissed putative claims where the net weight is clearly disclosed and where commonsense dictates that a reasonable consumer would expect slack-fill in the allegedly offensive product.

The parasitic product of these class actions has also led to the nefarious practice of sending meritless demand letters in order to extract settlements *in terrorem*. Small and medium businesses, such as Defendant, are targeted with perfidious claims because they are most vulnerable to capitulate to the invisible slap of litigation economics. The CLRA notice from the Plaintiff at issue was on behalf of undisclosed plaintiffs, alleged violations of the CLRA on account of the quantity of slack-fill alone which is perfectly permissible, was otherwise bereft of facts and focused on instilling fear into Defendant of

the possibility of a gargantuan exposure of liability under the CLRA. Under threat of a putative class action, numerous small and medium businesses settle even the most meritless claims, importantly without release of or compensation to the class, exposing them to further claims. The noticing firm and plaintiff pocket the settlements.

The Plaintiff's lack of investigation into the merits of his claim can be seen from the shell FAC which is a blatant copy and paste job of three other class actions that Plaintiff has started this year, with only the product, the pictures and the defendant changed with respect to his CLRA claim. This evidences how little investigation Plaintiff did before proceeding to demand Defendant settle or litigate this matter (*see* Exhibit C *Buso v Henkel Corp.* 3:17-cv-01132-DMS-MDD (filed June 5, 2017; voluntary dismissal August 8, 2017); *Buso v. Just Born, Inc.* 3:17-cv-01630-JAH-JMA (filed August 11, 2017), *Buso v. ACH Food Companies, Inc*. (filed September 14, 2017)). The CLRA notice sent anonymously had barely any allegations of facts. Common sense dictates that Plaintiff has likely sent more spurious demand letters with meritless slack-fill claims, some he has no doubt settled to his advantage.

Defendant filed an action on August 16, 2017 in the EDNY, where it is based, for a declaratory judgement that it is in compliance with Federal regulation 21 CFR §100.100 (a) on which all state slack-fill actions are predicated to resolve its national liability quickly and for claims of deceptive business practices and extortion against Plaintiff, see Exhibit B.

## III.   ARGUMENT

### A.   Plaintiff's Complaint Should Be Dismissed for Failing to State a Claim

#### i.   Legal Standard

In deciding a motion to dismiss for failure to state a plausible claim under Fed. R. Civ. Pro. 12(b)(6), the court must decide whether Plaintiff has plead sufficient facts for the court to draw a reasonable inference that Defendant is liable for the alleged offending conduct. See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 556 U.S. 662, 678-9  (2009), *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 550 U.S. 544, 556

4

1   (2007).  Plaintiff must allege facts that are sufficient for the court to infer that

2   Defendant's liability is plausible and "more than a sheer possibility that {Defendant} has

3   acted unlawfully" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether a

4   Plaintiff's claim is plausible, "the court is entitled to draw on its judicial experience and

5   common sense" *Iqbal*, 556 U.S. at 678-9. The tenet that a court must accept pleaded

6   factual allegations as true in determining whether Plaintiff has stated a plausible claim is

7   not applicable to "legal conclusions couched as factual allegations" *Iqbal*, 556 U.S. at

8   678 (quoting *Twombly*, 550 U.S. at 555), see also *In re Gilead Scis. Sec. Litig.*, 536 F.3d

9   1049, 1056-57 (9th Cir. 2008), and mere assertions, labels, conclusions, threadbare

10  recitals and formulaic recitations are insufficient to defeat a 12(b)(6) motion to dismiss,

11  *Epstein v. Washington Energy Co.*, 83 F. 3d at 1140 (9th Cir. 1996) affirming *In re*

12  *VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir.1993), see also *Oklevueha Native Am.*

13  *Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

14          Moreover, Plaintiff's CLRA claims, grounded in fraud, must meet the heightened

15  pleading requirements of F.R.C.P. 9 (b) and the circumstances of fraud must be plead

16  with particularity, see *Kearns v. Ford Motor Co.,* 567 F. 3d 1120, 1124-27 (9th Cir.

17  2009), *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003). A

18  Defendant must plead with particularity the who, what, where, when and how of the

19  alleged fraudulent misrepresentation as well as why the alleged misrepresentation is false

20  and misleading *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055

21  (9th Cir. 2011).

22          **ii.    Plaintiff Lacks Standing for All of Defendant's Products**

23          Article III provides standing when a plaintiff can show injury, actual or imminent

24  to a legally protected interest, causation and redressability and a plaintiff bears the burden

25  of showing they have standing to bring their claim *Monsanto Co. v. Geertson Seed Farms*

26  561 U.S. 139, 153 (2010), *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

27  The injury must be concrete and particularized, not merely conjectural or hypothetical,

28  *ibid*. Further, to have statutory standing under the CLRA, Plaintiff must plead actual

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

reliance and economic injury see *Hinojos v. Kohl's Corp.*, No. 11-55793, 2013 U.S. App. LEXIS 10185, *25-26 (9th Cir. May 21, 2013), *Kwikset Corp v. Superior Court* 246 P.3d at 855 (Cal 2011). Plaintiff cannot satisfy these requirements for products he has never even bought or alleged to have even seen *Carrera v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012); *see also Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010). Plaintiff only bought the Deglet Nour Dates, so he only relied on the Deglet Nour Dates' product and only suffered injury from that product and lacks standing for all other products.

Some courts have applied a laxer standing standard for consumer class actions and have found sufficient claim of reliance and injury for products not purchased by the name plaintiff if the products can be shown to have "substantial similarity" to the products the named plaintiff purchased, see *Anderson v. Jamba Juice Co.* 888 F. Supp. 2d 1000, 1005-6 (N.D. Cal 2012), *Victor v. R.C. Bigelow, Inc.* No. 13-02976, 2014 U.S. Dist. LEXIS 34550, *25-6 (N.D. Cal March 14, 2014). Substantial similarity of the products is required as consumer deception is context specific and the context must be the same for all products at issue. When a product's appearance is legally significant to a Plaintiff's claim, it is legally significant to the contextual legal analysis and Plaintiff, under this laxer theory, can thus only bring claims for unpurchased products that have an identical appearance, see *Ang v. Bimbo Bakeries USA, Inc*. No 13-cv-1196, slip. op at 14 (N.D. Cal. March 14, 2014). Appearance of the product is legally significant in claims of misleading slack-fill and therefore Plaintiff only has standing for unpurchased products that are of identical appearance, under this laxer theory. Defendant uses two sizes of pouches – its regular size, which is 6 inches wide, 7 inches in length and 4 mils thick that contain 5 oz. of fruit and its "mini" pouches which are 3.75 inches wide, 4.75 inches in length and 2.75 mils thick that contain 1.76 oz. of fruit. The two types of packaging are not identical nor even similar and require different analysis, failing to meet the

"substantial similarity" standard. Hence, Plaintiff lacks standing for Defendant's "mini" pouches under this laxer theory.

### iii.    Plaintiff Fails to Make a Plausible Claim

Plaintiff's FAC alleges that Defendant violated the Consumer Legal Remedies Act, California Civil Code §§ 1750 *et. seq.* Specifically, Plaintiff alleges that Defendant's packaging constitutes a deceptive business practice by misrepresenting that its goods have quantities they do not have and advertising its goods in a manner in which they do not intend to sell them and thus violating §1170(a)(5) and (a)(9) respectively, by claiming that Defendant's packaging contains misleading slack-fill so that consumers expect that they are buying more product than they receive. However, Plaintiff alleges this merely by regurgitating regulations, providing naked, insupportable assertions and concluding Defendant's liability therefore, which is insufficient to make a plausible claim.

The United States Food and Drug Administration has promulgated regulations on misleading slack-fill by defining misleading containers under the Federal Food, Drug and Cosmetic Act §343(d) which prohibits misleading containers 21 U.S.C. §343(d) and defines what is permissible and impermissible slack-fill 21 CFR §100.100(a) *ibid.*  The FDA recognized that slack-fill is necessary for numerous reasons in products and expressly enumerates functional and thereby permissible purposes of slack-fill. These include, *inter alia*, machine-fill, product settling and labelling requirements (21 CFR §100.100(a)(2), (a)(3) and (a)(6) respectively), which are all reasons for any slack-fill in Defendant's packaging. Additionally, 21 CFR §100.100 (a) qualifies a misleading container to be one where the slack-fill is not visible *and* not functional. This is mirrored by the slack-fill provisions of the California Fair Packaging and Labeling Act Californian Business & Professions Code § 12606.2 that adds the quantitative qualification "substantially". In order for Plaintiff to make a plausible claim that Defendant's packaging contains impermissible slack-fill, Plaintiff must therefore allege plausible facts that Defendant's packaging contains substantial, non-functional slack-fill that is not discernible to consumers.

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

Plaintiff's contention that all of Defendant's products contain "substantial" slack-fill is implausible as a matter of law on Plaintiff's alleged facts. The court need only accept well plead-facts as true and can use its common sense in discerning whether Plaintiff has alleged plausible facts. While Plaintiff contends his counsel has conducted an investigation, there are no facts alleged in his FAC as to what this entailed and all Plaintiff contends is that he opened one packet of one of Defendant's products that contained substantial space (FAC, para 3, p 3). The lack of investigation is further evidenced by Plaintiff's inconsistent allegations of the amount of slack-fill allegedly present in Defendant's products, at various times stating eighty percent (80%) (FAC para 3, p 3 and para 17, p 7) and fifty percent (50%) (FAC para 1, p 1), the alleged larger amount which he emblazons on the page in bold, rendering the white page incarnadine as if the stentorian script of this alleged statistic lends it legitimacy (FAC para 3, p 3). Additionally, the net weight is obscured in Plaintiff's photos and the top-down perspective fails to adequately display all the product that settles at the bottom, (see FAC para 17, p 7), an express permissible reason under 21 CFR §100.100(a) (3). Plaintiff fails to allege facts to support his contention that the alleged substantial space is routinely present in Defendant's packaging, simply producing a photograph of one sole packet, which may be the one packet he bought and opened and not representative of Defendant's packaging. While Plaintiff applies his claims to all of Defendant's products, Plaintiff does not once refer to Defendant's distinctively different "mini" pillow bags and it is not clear from his FAC whether he is even aware of their existence.

Additionally, as Plaintiff's own photos show and as can clearly be seen from Exhibit A, Defendant's SUP is a small, thin container whose contents, while not able to be seen, can readily be felt. While 21 CFR 100.100(a) defines misleading slack-fill to be non-functional slack-fill in containers in which consumers cannot view the contents, it is evident that the patent mischief it aims to redress is consumer deception and visibility is meant to address *discernibility*. Defendant's product in both the SUPs and pillow pouches is readily discernable. Plaintiff has no offered no allegation to the contrary, merely stating

in a formalistic fashion that the product is not visible, which is moot when it is in any case clearly discernible.

Moreover, even if the court finds that Plaintiff has sufficiently alleged that there is substantial slack-fill in Defendant's products, this allegation alone is insufficient to make a plausible claim under the CLRA for misleading conduct based on misleading impermissible slack-fill, for functional slack-fill, irrespective of quantity, is perfectly permissible under 21 CFR 100.100(a). Plaintiff must plead plausible allegations as to why the slack-fill is not functional and Plaintiff abjectly fails to do so, merely concluding that this is so. Plaintiff essentially regurgitates the FDA regulations for permissible slack-fill (FAC paras 13-14 and pp 5-6) and asserts "none of these are applicable" (FAC para 15, p 6) because there is no functional reason for the slack-fill and alleges Defendant intentionally incorporated the slack-fill solely to deceive consumers as to the quantity (see (FAC para 19, p 7, see also FAC para 15, p 6). Plaintiff however alleges no facts as to *why* this is the case. Plaintiff has not alleged any distinction particular to Plaintiff's products respecting other like products to infer any scienter on Defendant's part, for instance that Defendant's stand up pouches contain more slack-fill than other like products, or that Defendant's stand-up pouch is larger in size or that most like products are in diverse packaging. Plaintiff merely offers the court threadbare recitals of law and conclusions of liability shrouded in silence which have been found to be insufficient to make a plausible claim in misleading labelling and slack-fill actions *Victor v. R.C. Bigelow, Inc.*, No. 13-02976, 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014), see *Park v. Welch Foods, Inc*., No. 12-06449, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013), *Samet v. Procter & Gamble Co.*, No. 12-CV-1891, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013), *O'Connor v. Henkel Corp*., No. 14-CV-5547, 2015 WL 5922183, at *9 (E.D.N.Y. Sept. 22, 2015) and *Bautista v. Cytosport, Inc.* 7:15-cv-09081-CS *10 (December 12, 2015). Reciting the law and stating that Defendant has intentionally defied it is threadbare in that it is an *exemplum par excellence* of naked assertions and

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

conclusory allegations of liability that fail to satisfy the 12(b)(6) pleading standards to state a claim that is plausible on its face.

### iv.    Plaintiff Fails to Satisfy the Reasonable Consumer Standard

Plaintiff's CLRA claims are governed by the "reasonable consumer" standard *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995). Dismissal is appropriate when Plaintiff fails to make a plausible claim of consumer deception and the court can conclude that as a matter of law it is not likely that a reasonable consumer would be deceived by the alleged deceptive conduct, see *Williams v. Gerber Prods. Co.*, *ibid*., also see *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, *3 (C.D. Cal Sept. 19, 2007), *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, *3 (N.D. Cal. July 2, 2010), see also *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, *4 (C.D. Cal. May 18, 2012).

The 9th Circuit has definitely held that the reasonable consumer is a person of "ordinary intelligence" and not part of a vulnerable group or particularly gullible, unless the product was targeted specifically at such group (which the Plaintiff here does not allege) and has expressly rejected looser standards in favor of a reasonable consumer acting reasonably under the circumstances, see *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-7 (2003), *Freeman v. Time, Inc*. 68 F.3d 285, 289 (9th Cir.1995), also see *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc*., 283 F.2d 551, 557 (9th Cir. 1960). It is insufficient for a plaintiff to allege that it is merely conceivable or possible that a few consumers would be deceived but must allege plausible facts of a *likelihood* that a *significant* portion of the general public acting reasonably in the circumstances would be deceived *Freeman,* 68 F.3d at 289, see also *Hairston, ibid*.

Slack-fill suits have been dismissed at the pleading stage for failure to make a plausible claim of consumer deception where the net weight of the product was prominently disclosed, see *Hawkins v. UGI Corp.*, No. 14-08461, 2016 U.S. Dist. LEXIS 60013, *8-9 (C.D. Cal. May 4, 2016) holding that reasonable consumers would not

expect to receive every bit of propane from opaque cylinders when the net weight was prominent, see also *Fermin v. Pfizer*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016), holding that that a claim that a bottle's size deceived consumers when the pill count was prominently displayed was not only implausible but "didn't pass the proverbial laugh test." *Id*.

    The 9th Circuit recently decided whether a plaintiff had made a plausible claim of consumer deception regarding the accessibility of lip balm in a lipstick *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-6 (9th Cir. 2016). In deciding that the claim of consumer deception was implausible as a matter of law, the 9th Circuit thought it material that the container at issue was commonplace in the market and that therefore consumers understood the general mechanism of the containers and their provision of product accessibility as well as the fact that the net weight was clearly visible, *ibid*. This reasoning was applied to slack-fill in *Bush v. Mondelez International*, *Inc. et. al*. Case No. 3:16-cv-02460, 2016 U.S. Dist. LEXIS 140013, *6-9 (N.D. Cal. Oct. 7, 2016) in which the court held that it was implausible as a matter of law not to expect some slack-fill in products and implausible as a matter of law to claim consumer deception when the net weight was accurately disclosed.

    *Ebner*, *supra*, and *Bush*, *supra*, are clearly applicable in this instance. This case concerns a small, thin, self-standing pouch which is covered by a gossamer plastic with its net weight clearly visible, its vermillion font readily discernable against the ivory film and placed in the usual space where one would expect to find net weight, Exhibit A. Plaintiff does not dispute that the net weight is inaccurate or not readily discernable. Additionally, the self-standing pouch at issue is commonplace in the industry and consumers understand the mechanics of the self-standing pouch in that they expect slack-fill and expansion of the packaging when they open it. Plaintiff has not plead that the packaging at issue is in any way different to the packaging of any other dried fruit product or that it contains more slack-fill than the standard self-standing pouch containing dried fruit to infer why a reasonable consumer acting reasonably in the

circumstances would be deceived as to the amount of the dried fruit in Defendant's packaging.

Plaintiff's claim that a reasonable consumer acting reasonably in the circumstances would be deceived is implausible as a matter of law because it entirely rests on consumers believing from the size of the packaging alone that they would receive more product inside without pleading any facts as to *why* size is material. In Plaintiff's opening paragraph, Plaintiff parades a statistic from an article to the court that consumers only take a few seconds to make a purchasing decision to support their claim that consumers do not look at net weight and only look at the size of the container in deciding the best value between different products (FAC, para 1, p. 1). This naked assertion is logically fallible. If consumers have time to judge the respective size of different products and their dollar value to determine which product provides the best value for money, they surely have sufficient time to scrutinize the net weight. Further, Plaintiff has offered no facts as to whether Defendant's packaging is of any greater size than any other like product or that Defendant's packaging contains less product than any other like product. Moreover, if Plaintiff contends that reasonable consumers would likely be deceived because they thought they were receiving more value for their money, then Plaintiff needs to allege facts that concern Defendant's price.

Additionally, common sense and the immutable laws of physics evidence the logical fallacy of Plaintiff's claim. Even accepting Plaintiff's contention that a consumer cannot see the contents of Defendant's packaging, they are nevertheless readily felt because they are covered by thin plastic and air weighs less than dried fruit. Perhaps there are members of our community, such as Plaintiff, that cannot feel the difference between dried fruit and air, or that do not pick up products from the shelves with their hands due to a fortified fear of germs or some other unusual reason, but the test the Plaintiff has to satisfy is a reasonable person that is acting reasonably, which necessarily involves them touching the product before they buy it.

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

###### v.      Plaintiff Fails to Satisfy the Heightened Pleading Requirements of Rule 9(b)

Plaintiff has failed to meet the heightened pleading standards applicable to CLRA actions sounding in fraud as Plaintiff has not plead the *who*, *what*, *where* and *why* of his claim with any particularity despite accusing Fruit Bliss of intentional deception , see *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011), see *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1 (9th Cir. 2009) (where complaint alleges intentional conduct, 9(b) applies), *In re GlenFed Securities Litigation* 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*). Apart from designating Plaintiff as the person deceived and Defendant as the person making the misrepresentation, Plaintiff's claim fails on all other counts for lack of specificity. Plaintiff has failed to state with specificity when and where he bought the one product he alleges to have bought and seen, simply stating he bought it at some indeterminate time during the first half of 2017, somewhere in San Diego (FAC para 3, pp. 3). Further, Plaintiff fails to plead with specificity which products his claim applies to, for while he claims that he only bought Defendant's Deglet Nour Dates' product and while he alleges there is slack-fill in this product, he extends his claim with no explanation to all of Defendant's products that contain impermissible and misleading slack-fill (FAC para 3, p 3). It is difficult to conceive of a more amorphous definition in detailing what products an alleged misrepresentation applies to than simply stating - as Plaintiff has done here– all products which the alleged misrepresentation applies (FAC para 29, pp. 9).

Additionally, Plaintiff has to plead with particularity what was misleading about Defendant's alleged conduct, how he was mislead and how he was injured thereby, see *Kearns, supra, Vess, supra.* Plaintiff merely states that he expected to receive a full container of dates, judging from the size of the container (FAC para 3, pp. 3). This statement is logically fallible, for the size of the container is irrelevant to the expectation of *how* full it should be. In his opening paragraph, Plaintiff claims that consumers and assumingly, Plaintiff, compare the sizes of different products and not the net weight

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

(FAC para 1, pp. 1), but he does not allege that Defendant's products are any larger in size and smaller in content or any more expensive than any other like product. It is not readily discernable from Plaintiff's claim *how* Defendant "misrepresents" its quantity, "advertises" its products without intent to sell them with the quantities as advertised (including because Plaintiff has also failed to state which products this applies to) and "promises" more quantity than provided because (i) the net weight is accurate and clearly discernable and Plaintiff does not dispute this (ii) Plaintiff does not allege he received any less product than was represented by the net weight (iii) SUPs of necessity contain slack-fill and are commonplace  (iv) the slack-fill is readily discernable to people having the benefit of ordinary minds, sight and touch and (v) Plaintiff offers absolutely no reason why Defendant's SUP is any different to any other SUP containing like product to support an expectation that it should contain more product than it does.

Plaintiff implicitly admits that he cannot satisfy the 9(b) particulars for his CLRA claim, for he requests the court find a *presumption* of reliance rather than requiring him to plead it with any specificity (FAC para 52, p 13). It is settled law, however, that CLRA claims, sounding in fraud, must satisfy the heightened 9(b) pleading standard and that this includes pleading *reliance* with specificity, see *Kearns, supra, Vess, supra.* Plaintiff has the burden of pleading both actual and reasonable reliance with particularity and it is simply insufficient to plead that he and other consumers believed the product to be substantially full without any explanation as to why this would be the case, particularly when SUPs are commonplace and by necessity contain functional and permissible slack-fill.

### vi.    Plaintiff's Claims Are Preempted

Plaintiff's claims are preempted as Plaintiff's allegations of impermissible slack-fill are really allegations that substantial slack-fill should be presumed impermissible *per se*, in masquerade.

Preemption can be express, when it is manifest from the text of a federal law *Jones v. Rath Packing C*o., 430 U.S. 519, 525, 97 S. Ct. 1305, 51 L.Ed.2d 604 (1977) or

---

14

1   implied from a pervasive regulatory scheme that occupies the field *Gade v. National*

2   *Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). The FDCA has express preemption

3   provisions and its text is clear that supplemental state laws can only provide private

4   actions to enforce *identical* provisions, see 21 U.S.C. § 343-1, see *Astiana v. Hain*

5   *Celestial Grp., Inc*., 783 F.3d 753, 757 (9th Cir. 2015), also see *Del Real, LLC v. Harris*,

6   636 Fed. Appx. 956, 957 (9th Cir. 2016), affirming *Del Real LLC v. Kamala D. Harris*,

7   966 F. Supp. 2d 1047, 1054-65 (E.D. Cal. 2013). Additionally, the federal labelling

8   scheme is so pervasive and a uniform, national system, necessary, that a patchwork of

9   inconsistent laws would hinder the federal scheme and be injurious to inter-state

10  commerce, see *Bimont v. Unilever U.S., Inc.*, 2015 U.S. Dist. LEXIS 119908, *11-16

11  (S.D.N.Y. 2015), see also *Turek v. Gen. Mills, Inc*., 662 F.3d 423, 426-7 (7th Cir. 2011).

12  Even the text of California's mirroring slack-fill regulation evidences this, for it expressly

13  refers to the federal regulation and states that it must be interpreted consistent with

14  federal authority and is inoperative to the extent that it does not impose identical

15  requirements, see California Fair Packaging and Labeling Act Californian Business &

16  Professions Code, see § 12606.2 (e) and (f).

17      Leaving aside Plaintiff's conclusory statements which merely recite the 21 CFR

18  §100.100 (a) permissible functional reasons for slack-fill and concludes they are

19  inapplicable, Plaintiff merely alleges that there was substantial slack-fill in one packet,

20  that he expected it to be *full* (see FAC, para 3, p 3), that other consumers would also

21  expect this and that consumers do not read disclosed net weight (FAC, para 1, p 1).

22  Plaintiff's allegations thus attempt to read a quantitative restriction to slack-fill which is

23  not present in the FDCA regulations that expressly allow functional slack-fill *irrespective*

24  of quantity. Additionally, he attempts to provide more onerous net labelling requirements

25  as he essentially argues that current standards are to no effect. To allow Plaintiff's claim

26  to succeed on his clams would thus interpret §12606.2 in a manner that is more onerous

27  and not identical to §21 CFR 100.100 (a) and is thus preempted.

28

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Plaintiff's Claims Should Be Dismissed for Improper Venue**

       **i.    Legal Standard**

Rule 12 (b) (3) and 28 U.S.C. §1406(a) authorize a court to dismiss an action for improper venue. Venue is proper where a Defendant resides within the judicial district or where a substantial amount of the acts or omissions of the causes of action occurred, see 28 U.S.C. § 1391(b) (1) and (2). Plaintiff has the burden of proving that venue is proper *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979).

       **ii.    Plaintiff Cannot Satisfy Venue Requirements**

Defendant is a New York company located in Brooklyn, New York and is not a resident of this venue. Plaintiff does not dispute this. Additionally, no element of the cause of action occurred within this venue. Courts have accepted venue is proper in misleading advertising actions where the misrepresentation was made *Hawkins v. Gerber Products Co*., 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) and where it was relied upon *Allen v. Similasan Corp*., Civ. No. 12-376 BTM WMC, 2013 WL 2120825, *8 (S.D. Cal. May 14, 2013). Misrepresentation is made where Defendant made relevant marketing and manufacturing decisions, *Hawkins*, *supra*, which in this instance, solely occurred in Brooklyn. Plaintiff alleges in his FAC that he bought the allegedly offending packet of Deglet Nour Dates product in San Diego, California (FAC, para 2, p 3) and that he lives in Poway, California and (para 9, p 10). Hence, any reliance by Plaintiff on Defendant's allegedly misleading slack-fill occurred in the Southern District of California and not in this judicial venue. Accordingly, venue is proper only in the Southern District of California and the Eastern District of New York. It is improper here and should be dismissed.

**C.    Alternatively, Plaintiff's Claims Should Be Transferred to the EDNY**

       **i.    Legal Standard**

District courts have wide discretion to transfer to a more appropriate venue for the convenience of the parties and witnesses and in the interests of justice, 28 U.S.C. 1404(a), *Cook v. Fox*, 537 F.2d 370, 371 (9th Cir.1976), also see *Munns v. Clinton*, 822

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

F. Supp. 2d 1048, 1079 (E.D. Cal 2011). While ordinarily deference is provided to Plaintiff's choice of forum, plaintiff's choice is afforded less weight when Plaintiff seeks to represent a class, particularly when the representative plaintiff does not reside in the district (such as is the case here), see *Hawkins v. Gerber Products Co*., *supra*, at 1214-15. The 9th Circuit has directed that the court can look at a number of private factors, including the ease of access to evidence and the court's subpoena power over third party witnesses in particular and the feasibility of consolidating all claims, *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498-9 (9th Cir. 2000). The court may also look at public factors, such as the respective interests of the different state forums in adjudicating over the dispute, *Piper Aircraft v. Reyno*, 454 U.S. 235, 260-1 (1981). The paramount importance is to protect the litigants and reduce the waste of judicial resources, *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). It is highly contextual, case-specific analysis, see *Jones, supra*; *Stewart Organization, Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988), *Westinghouse Elec. Corp. v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970) and must be looked at from the point of view of both parties and not merely shift the burden from one party to another *Safarian v. Maserati N. Am., Inc*., 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008). The moving party has the burden of showing that their proposed venue will achieve this aim and that their proposed venue has jurisdiction *F.T.C. v. Wat on Pharm., Inc*., 611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009). There is a strong presumption in favor of first filed actions see *Penn General Cas. Co. v. Commonwealth of Pennsylvania*, 55 S. Ct. 386, 79 L. Ed. 850, 294 U.S. 189, 195 (1935), *Kline v. Burke Construction Co.*, 43 S. Ct. 79, 67 L. Ed. 226, 260 U.S. 226, 228-9 (1922). Deference is provided to first filed actions to preserve comity between sister courts and to avoid judicial waste, inconvenience and the embarrassment of inconsistent judgements *Kerotest Manufacturing Company v. C-O-Two Fire Equipment Company*, 342 U.S. 180, 185-6 (1952), *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991), *Church of Scientology v. U.S. Dep't the Army*, 611 F.2d 738, 750 (9th Cir. 1979), also see *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). The presumption in favor

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

of first filed actions, which is applicable to cases that contain not only identical actions but those substantially similar, *Kohn Law Group v. Auto Parts MGF. Mississippi*, 787 F.3d 1237, 1239-41 (2015), is only to be displaced in exceptional circumstances such as lack of jurisdiction or bad faith forum shopping, see *Joseph Bancroft & Sons Co. v. Spunize Co. of America,* 268 F.2d 522, 524-5 (2d Cir. 1959).

### ii. The Parties Are Already in Litigation in the Eastern District of New York on Substantially the Same Issues

As the transfer analysis is highly contextualized, see *Jones, supra, Westinghouse, supra, Stewart, supra,* any analysis respecting the benefits to the parties and the interests of justice must start with the fact that the parties are already in litigation in the EDNY on substantially the same issues, *Penguin Trading, Inc. dba Fruit Bliss v. Anthony Buso and John and Jane Does* 1:17-cv-04826-DLI-RLM (E.D.N.Y. 2017), Exhibit B. The court's analysis must therefore account for the fact that not transferring the issue may lead to concomitant bicoastal actions that will significantly increase the expense of both litigants, including by parties having to obtain both California and New York counsel and duplicate their work, needlessly consume the time of parties and witnesses and risk the embarrassment of inconsistent judgements.

Further, there is a strong presumption in favor of first filed actions over the same or substantially the same issues, see *Kerotest, supra, Alltrade, supra, Kohn Law supra*. Defendant filed an action for declaratory judgement that it was not in violation of 21 CFR §100.100 (a) and against the Plaintiff for deceptive business practices under New York General Business Law §349 and the tort of extortion in the EDNY. The crux of the New York action is the same as in this action – whether Defendant's products have misleading slack-fill. Additionally, the tortious charges against Plaintiff in the New York action are inextricably linked to the merit of Plaintiff's claims against Defendant, for Defendant is charging Plaintiff of conducting a deceptive business of sending spurious demand letters of misleading slack-fill and extorting settlements from businesses under color of legal

1   claims. Hence, the causes of action before this court and that before the EDNY are

2   substantially the same.

3               iii.       **The New York Action is an Appropriate, First Filed Action**

4           Exceptional circumstances of bad faith or forum shopping are not present in this

5   instance to warrant the court from departing from the strong presumption of transferring

6   to first filed actions between the parties. The crux of an anticipatory filing is the

7   anticipation of the filing of a claim in an intended plaintiff's express chosen forum and a

8   rushed filing in a different forum by a putative defendant in order to avoid a plaintiff's

9   express forum, see *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *Oleg*

10  *Cassini, Inc. v. Serta, Inc.*, 2012 LEXIS 33875, *5-6 (S.D.N.Y. 2012). This is expressly

11  not the case. Defendant filed its action in the EDNY precisely because it did not

12  anticipate any filing from Plaintiff but rather anticipated that Plaintiff intended to keep

13  Defendant in insufferable, interminable legal purgatory obligated to disclose a potential

14  claim, no matter how meritless, to its current and potential investors and lenders.

15  Additionally, Defendant faced exigent circumstances which warranted a quick resolution

16  of its national liability as it was about to launch an expansion of its business which

17  necessitated a resolution of liability with respect to its packaging. Plaintiff's lack of intent

18  to file its baseless claim is the linchpin of Defendant's suit in the EDNY and Plaintiff's

19  belated filing of its claim in this action on September 22, 2017 more than a month after

20  Defendant's filing on August 16, 2017, and after parties exchanged motions over

21  Plaintiff's intention to file a CLRA claim does not evidence his intention to file, Exhibit

22  B. The FAC is a mere copy and paste job of Plaintiff's other class actions all of which

23  use the same complaint paragraph by paragraph for his CLRA cause of action – all

24  against larger companies where filing a class action is more profitable to Plaintiff – which

25  speaks to its lack of merit and rather points to Plaintiff filing this action in response to

26  claims he faces in the EDNY action, see Exhibit C.

27          Courts have departed from the strong presumption in favor of first-filed actions

28  when the intended Defendant has clearly filed first as a result of forum shopping, see

19

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

1   *D.H. Blair & Co., supra*. In deciding whether a Defendant has chosen their forum as a
2   result of forum shopping alone in an anticipatory bad faith suit, the court looks into the
3   appropriateness of the intended Defendant's chosen forum and its contacts with the
4   parties, see *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d at 424 n.4 (2nd Cir. 1965), see also
5   *Columbia Pictures Industries, Inc. v. Schneider*, 435 F. Supp. 742, 750-1(S.D.N.Y.
6   1977). Defendant's filing of its action in the EDNY was clearly not an incidence of forum
7   shopping. Defendant is located within the EDNY, all of the evidence of the packaging
8   design is located in the EDNY, and the majority of the witnesses, importantly including
9   the third-party witnesses such as Defendant's packaging consultants, are located within
10  the venue and Defendant has New York state claims against Plaintiff, appropriate for a
11  district sitting in New York to decide. Additionally, California courts were not open as a
12  forum to Defendant who otherwise would have to live with a sword over its head while
13  awaiting a suit that may never come, as California law has denied declaratory judgements
14  in CLRA actions, see *Lunada Biomedical v. Nunez* 230 Cal. App. 4th 459 (2014).

### iv.   The Eastern District of New York is the More Convenient Venue

15       Even aside from the strong presumption in favor of the first filed EDNY action, an
16  analysis of the *Jones* factors weighs in favor of the EDNY as the more appropriate forum.
17       The EDNY has personal jurisdiction over both parties. Defendant is a New York
18  registered business and is located within the venue and Plaintiff is subject to New York's
19  long arm statute that clearly extends to persons that have committed torts or caused
20  tortious injury in New York, see New York Civil Practice Law §302. Plaintiff's actions
21  can easily be consolidated as a counter-claim in the EDNY for the EDNY has jurisdiction
22  to hear Plaintiff's CLRA claim under the Class Action Fairness Act, 28 U.S.C.
23  §1332(d)(2) and Plaintiff could have brought this action as a counter-claim in the pending
24  EDNY action.
25       Further, the EDNY is the more convenient venue. Fruit Bliss's employees who
26  made the marketing and manufacturing decisions are located there and all the documents
27  are located there. Additionally, third party witnesses who advised on these decisions,
28

including the packaging consultants, Isak Bengiyat and Jorge Pereira of Aripack, Inc. work and/or reside in Brooklyn. The designer of the packaging, Sue Taggert, owner of ADinfinitum, resides in the city of New York. These third party witnesses are beyond the subpoena power of this court, but within the subpoena power of the EDNY. Additionally, the manufacturer of the filled pouches Nova Fruit International A.S. and all Nova witnesses including Bruno N. Manusso, its owner, reside in Gaziemir, Turkey and it is more convenient for them to testify in New York than in Los Angeles due to travel costs and time. Further, it is prohibitively prodigious for Defendant with its paltry income to litigate the matter in California (it earned $34,886 in 2016) and it would be a dire disruption to its business to have its employees travel here from Brooklyn, particularly as it's a very small business. Plaintiff, on the other hand, appears to have adapted his schedule to be open to appearance since he has pursued numerous concomitant class actions, all with one law firm that appears to be able to financially support his litigations.

The interests of justice and the respective public interest of the States of California and New York weigh in favor of the EDNY. While California has an interest in enforcing its own consumer protection laws, New York likewise has an equal interest in ensuring its businesses do not commit misrepresentations and conform to law, particularly as the crux of misleading slack-fill hinges on a federal regulation and is as applicable in New York as in California. *Hawkins v. Gerber Products Co*., 924 F. Supp. 2d 1208, 1215-6 (S.D. Cal. 2013) ("the crux of the present case lies not in California, the state where Plaintiff purports to have purchased a falsely advertised product, but in New Jersey, the state where Gerber is headquartered and allegedly issued misrepresentations concerning its probiotic products. The primary focus of this action is the development and marketing of certain Gerber consumer goods, and decisions about how such goods were to be advertised to consumers.") Further, any resolution of this issue affects Defendant on a national scale – it must either change all its products nationally or it can continue at risk with its current packaging because all state slack-fill class actions are predicated on violations of § CFR 100.100(a).

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS

### D.     In the Second Alternative, the Court Should Stay this Proceeding

If the court does not dismiss this claim or transfer to the EDNY, it should stay these proceedings until the EDNY decides on continuance of the action before it. This is warranted in the interests of economy, consistency, and comity, see *Kohn Law, supra*, see *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 95 (9th Cir. 1982), see also *Cadle Co.*, *supra.* Judges also have wide discretion to stay proceedings incidental to their inherent power to control their docket in the interests of economy and efficiency of the court's time and that of counsel and litigants see *Landis v North American Co*. 299 U.S. 248, 255-6 (1936). In exercising its discretion to grant a stay, a court must weigh the competing interests and maintain the parties in equipoise, see *ibid*, also see *Leyva v. Certified Grocers of California, Ltd*., 593 F.2d 857, 863 (9th Cir. 1979).

The interests of comity and justice warrant against the continuance of two concomitant proceedings which will only congest the courts, duplicate the expense and efforts of both parties and may lead to the embarrassment of inconsistent judgements which would be deleterious to rule of law, see *Kohn Law*, *supra*.

Plaintiff has the right to petition the EDNY for transfer and consolidation of claims to this court and has done so, and the EDNY is well adept to assess whether this district is the more appropriate venue and whether exceptional circumstances exist to depart from the strong presumption of first filed actions. New York district courts have previously transferred proceedings to California district courts where they have found the particular circumstances warrant transfer, see *Columbia Pictures Industries, supra,* where the court transferred to the second filed Central District of California due to a real question of personal jurisdiction over California residents that had limited contacts with New York on an action for declaratory judgement only (as distinguished from this case where there are tort and New York statutory claims against Plaintiff).

It would be a grave injury to comity and to the presumption of first filed actions to proceed with this action without providing the EDNY the chance to assess its jurisdiction and the appropriateness of its venue. If there is a strong presumption in favor of first filed

actions in deference to sister courts, then it logically follows that the first filed court should first decide on the issue of whether it is an appropriate venue without it being hijacked by a second filed action. This is also supported by sound public policy against encouraging defendants from filing actions in different forums to drain plaintiffs of their litigation resources rather than filing counter claims which would not only congest the courts but provide practical advantage to litigants with bigger pockets and further hinder access to the courts to impecunious plaintiffs who have just claims.

Additionally, the staying of these proceedings until the EDNY has decided on whether it should continue its proceedings or transfer, of which action the Plaintiff has the right to move the court, will not prejudice either party, and can only limit their respective fees and costs and will maintain them in equipoise.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant Fruit Bliss respectfully requests that this Court dismiss Plaintiff's claim with prejudice. In the alternative, Defendant Fruit Bliss respectfully requests that this Court transfer this matter to the first filed action between the Parties in the Eastern District of New York. In the second alternative, Defendant Fruit Bliss requests that this Court stay these proceedings until a decision has been made by the Eastern District of New York whether to continue or transfer the action between the Parties before it.

Dated: October 25, 2017                        ALEXANDRA ARNERI

CITTONE & CHINTA, LLP

/s/Alexandra Arneri

Attorneys for Defendant

PENGUIN TRADING, INC. d/b/a FRUIT BLISS

NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR STAY FIRST AMENDED COMPLAINT

2:17-cv-07025-DMG-KS